IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Eric Anthony Shuler, | ) | C/A No. 0:13-1504-DCN-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Carolyn W. Colvin, Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC. The plaintiff, Eric Anthony Shuler ("Shuler"), brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying his claims for Disability Insurance Benefits ("DIB"). Having carefully considered the parties' submissions and the applicable law, the court concludes that this matter should be affirmed.

## ADMINISTRATIVE PROCEEDINGS

In September 2009, Shuler applied for DIB, alleging disability beginning January 8, 2009. Shuler's application was denied initially and upon reconsideration, and he requested a hearing before an administrative law judge ("ALJ"). A hearing was held on May 16, 2011, at which Shuler, who was represented by Thomas White, Esquire, appeared and testified. After hearing testimony from a vocational expert, the ALJ issued a decision on July 28, 2011 finding that Shuler was not disabled. (Tr. 15-26.)

Shuler was thirty-four years old on his alleged disability onset date. (Tr. 135.) He has a ninth-grade education and past relevant work experience hanging drywall. (Tr. 160, 164.) Shuler alleged disability due to lack of stability in his leg. (Tr. 160.)

The ALJ found as follows:

1.    The claimant will meet the insured status requirements of the Social Security Act through March 31, 2013.

2.    The claimant has not engaged in substantial gainful activity since January 8, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*).
                               *    *    *
3.    The claimant has the following severe impairments: post laminectomy syndrome (20 CFR 404.1520(c)).
                               *    *    *
4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 20 CFR 404.1525 and 404.1526).
                               *    *    *
5.    . . . [T]he claimant has the residual functional capacity to sit 6 hours in an 8-hour day with normal breaks and stand and walk 6 hours in an 8-hour day with normal breaks although he should have the freedom to change positions. Additionally, he can lift 20 pounds occasionally (up top 1/3 of the workday) and 10 pounds frequently (up to 2/3 of the workday). The claimant can push and pull within the pound limitations set forth above with his upper extremities. He can occasionally operate foot controls with the lower extremities. The claimant cannot climb ladders, ropes or scaffolds and can perform other postural activities occasionally. Furthermore, the claimant must avoid unprotected heights and dangerous moving machinery.
                               *    *    *
6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565).
                               *    *    *
7.    The claimant was born . . . [in] 1974, and was 34 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8.    The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a



finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

*    *    *

11.    The claimant has not been under a disability, as defined in the Social Security Act, from January 8, 2009, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 17-26.) The Appeals Council denied Shuler's request for review on March 29, 2013, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-5.) This action followed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A) and (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

(1)    whether the claimant is engaged in substantial gainful activity;

(2)    whether the claimant has a "severe" impairment;

(3)    whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4)    whether the claimant can perform his past relevant work; and

(5)    whether the claimant's impairments prevent him from doing any other kind of work.



20 C.F.R. § 404.1520(a)(4).[1]  If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step.  Id.

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments.  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner.  To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy.  42 U.S.C. § 423(d)(2)(A); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).  The Commissioner may carry this burden by obtaining testimony from a vocational expert.  Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard."  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).  Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied.  See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).  "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more

---

[1] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances.  20 C.F.R. § 404.1520(h).



than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d

at 589.  In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence,

make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id.

Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold

it if it is supported by substantial evidence.  Blalock, 483 F.2d at 775.

## ISSUES

Shuler raises the following issues for this judicial review:

I.     The ALJ failed to consider the combined effect of Mr. Shuler's multiple
       impairments; and

II.    The ALJ's credibility analysis is not supported by substantial evidence.

(Pl.'s Br., ECF No. 18.)

## DISCUSSION

### A.     Shuler's Impairments

Although Shuler presents his first issue as only alleging that the ALJ erred in failing to

consider the combined effects of his impairments, counsel also includes several additional issues in

the brief.  Shuler first argues that the ALJ erred in finding that his mental impairments were non-

severe.  He also argues that even if his depression was a non-severe impairment, the ALJ erred in

failing to evaluate the combined effects of his impairments, both severe and non-severe.  Finally,

Shuler briefly argues that there was substantial evidence to find that he met or equaled Listing 1.04A.

### 1.     Step Two

Step Two of the sequential evaluation requires the ALJ to "consider the medical severity of

[a claimant's] impairment(s)." 20 C.F.R. § 404.1520(a)(4)(ii).  The claimant bears the burden at this

step to show that he has a severe impairment.  See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).



A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  "Basic work activities" means "the abilities and aptitudes necessary to do most jobs."   Examples of these include:

(1)    Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
(2)    Capacities for seeing, hearing, and speaking;
(3)    Understanding, carrying out, and remembering simple instructions;
(4)    Use of judgment;
(5)    Responding appropriately to supervision, co-workers and usual work situations; and
(6)    Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b).  "[A]n impairment can be considered as not severe only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."

Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (emphasis in original) (internal quotation marks omitted).

At Step Two, the ALJ found that Shuler's post laminectomy syndrome was a severe impairment, but that his depression and anxiety were non-severe impairments.  In finding that Shuler's depression and anxiety were non-severe impairments, the ALJ found that

[a]t a psychological evaluation in May 2010, the claimant denied problems with memory, concentration, delusions or hallucinations.  He was oriented to all spheres and spontaneously laughed and joked.  Notably, the claimant denied problems with depression or crying spells.  The Beck Depression Inventory-II indicated a self-report depression score in the mild range.  Although the Beck Anxiety Inventory indicated a self-report anxiety score in the moderate range, the claimant was assessed with GAF score of 71-80, indicating no more than slight impairment. (Exhibit 23F at 2-3) Treatment notes from November 2010 also indicate that the claimant had been taking Cymbalta 30mg for 7 days and 60mg for 7 days.  The claimant reported that he could notice a positive difference already in that he was not as angry, was more patient, and his wife could see a positive difference.  (Exhibit 22F)  The claimant's previous complaints of irritability and shortness around his wife and children in early



> November 2010 appear to have been greatly aided by his prescription for Cymbalta.
> (Exhibit 24F at 3)[.]

(Tr. 17-18.)  The ALJ also considered the four broad functional areas set out in Listing 12.00C, which include activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation.  The ALJ found that Shuler had mild limitations in activities of daily living.  In support of this finding, the ALJ observed that in May 2010 Shuler reported caring for his three-year-old child during the day, walking next door to talk with his father, driving short distances, and attending church once per week.  The ALJ noted that Shuler also reported irritability including aggravation, but she found this report to be inconsistent with the ability to care for a three-year-old child.  The ALJ also found that Shuler's report during his vocational assessment in November 2010 that his wife did not work so she could stay home and care for him was inconsistent with his May 2010 report that she stayed home to take care of the housework and yard work.  The ALJ also found that Shuler had mild limitations in social functioning, observing that after he began taking Cymbalta Shuler reported in November 2010 that he was not as angry and was more patient.  The ALJ again pointed to Shuler's reports in May 2010 of visiting his father next door and attending church and also observed that notes from that examination indicated Shuler laughed and joked spontaneously.  The ALJ found that Shuler had mild limitations in concentration, persistence or pace in light of Shuler's denial in May 2010 of problems with memory, concentration, delusions, or hallucination; his GAF score of 71-80; and reports of increased patience in November 2010 after starting Cymbalta.  Finally, the ALJ found no episodes of decompensation which have been of an extended duration.  Therefore, the ALJ found Shuler's mental impairment was non-severe, citing 20 C.F.R. § 404.1520a(d)(1).  (Tr. 18-19.)

Shuler argues that the ALJ's analysis of his mental impairments is internally inconsistent. He appears to argue that findings of mild limitations in three of the broad areas of functioning is inconsistent with a determination that his depression was non-severe. However, contrary to Shuler's assertion of inconsistency, § 404.1520a(d)(1) specifically provides that "[i]f we rate the degree of your limitation in the first three functional areas as "none" or "mild" and "none" in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities." Shuler also argues that the ALJ erred in discounting his score on the Beck Depression Inventory as inconsistent with his GAF score because GAF scores are not reliable indicators of functioning.[2] As an initial matter, the Beck Depression Inventory-II revealed a self-report depression score in the mild range and the ALJ did not discount this determination. Rather, the ALJ stated that "[a]lthough the Beck *Anxiety* Inventory indicated a self-report anxiety score in the moderate range, the claimant was assessed with GAF score of 71-80, indicating no more than slight impairment." (Tr. 18.) As these scores stemmed from the same examination and the Beck Anxiety Inventory appears to be a self-reported score, the court finds that Shuler has failed to demonstrate that the ALJ erred in weighing the evidence before her. Further, the mere presence or diagnosis of a mental condition is insufficient to meet Shuler's burden at Step Two; rather, he must show how it significantly limits his mental ability to do basic work activities. See 20 C.F.R. § 404.1520(c); Bowen, 482 U.S. at 146 n.5; see also Washington v. Astrue, 698 F. Supp. 2d 562, 580 (D.S.C. 2010) ("Plaintiff's medical records

---

[2] Shuler further appears to challenge the ALJ's determination based on an incorrect assertion that the Beck Depression Inventory was completed by Mr. David R. Price in November 2010, while the GAF score was determined by Dr. William Given Kee in May 2010. However, the ALJ's opinions and the records reflect that the Beck Depression Inventory as well as the GAF scores were determined during the same examination by Dr. Kee in May 2010. (Tr. 582-84.)



establish the existence of her impairment, but the current record contains no evidence of how it significantly limits her physical or mental ability to do basic work activities."). The court finds that Shuler has failed to demonstrate that the ALJ's decision is unsupported by substantial evidence or controlled by an error of law in finding that his depression was a non-severe impairment at Step Two.[3]

### 2.    Steps Three and Four

Shuler also argues that even if the ALJ properly determined that his depression was non-severe, the ALJ erred in failing to evaluate his impairments in combination at Steps Three and Four of the sequential process. At Step Three, the Commissioner must determine whether the claimant meets the criteria of one of the Listings and is therefore presumptively disabled. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis added). It is not enough that the impairments have the diagnosis of a listed impairment; the claimant must also meet the criteria found in the Listing of that impairment. 20 C.F.R. § 404.1525(d); see also Bowen v. Yuckert, 482 U.S. 137, 146 (1987) (noting that the burden is on the claimant to establish that his impairment is disabling at Step 3); Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (same). The Commissioner

---

[3] Moreover, even if the ALJ erred in failing to find that his depression was severe, Shuler has failed to demonstrate any additional functional limitations stemming from this impairment other than those found by the ALJ in assessing Shuler's residual functional capacity. Therefore, the court finds that to the extent the ALJ erred, such error was harmless. See Shinseki v. Sanders, 556 U.S. 396 (2009) (stating that a party attacking an agency determination bears the burden of showing that an error was harmful); Ngarurih v. Ashcroft, 371 F.3d 182, 190 n.8 (4th Cir. 2004) ( "While the general rule is that an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained, reversal is not required when the alleged error clearly had no bearing on the procedure used or the substance of the decision reached.") (internal quotation marks and citations omitted); Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004) (noting that the principle of harmless error applies to Social Security disability cases).



compares the symptoms, signs, and laboratory findings of the impairment, as shown in the medical evidence, with the medical criteria for the listed impairment. Additionally, when a claimant has more than one impairment, the ALJ must consider the combined effect of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. 20 C.F.R. § 404.1523. In Walker v. Bowen, 889 F.2d 47, 49-50 (4th Cir. 1989), the United States Court of Appeals for the Fourth Circuit explained:

> [A] failure to establish disability under the listings by reference to a single, separate impairment does not prevent a disability award. It is axiomatic that disability may result from a number of impairments which, taken separately, might not be disabling, but whose total effect, taken together, is to render claimant unable to engage in substantial gainful activity. In recognizing this principle, this Court has on numerous occasions held that in evaluating the effect[] of various impairments upon a disability benefit claimant, the Secretary must consider the combined effect of a claimant's impairments and not fragmentize them. . . . As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments.

Id. at 49-50 (internal citations omitted).

At Step Three, the ALJ found that Shuler "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526." (Tr. 19.) In making this finding, the ALJ explicitly discussed whether Shuler's post laminectomy syndrome meets or equals the requirements of Listing 1.04 and found that it did not. Shuler argues that the ALJ's failure to expressly consider the combined effects of his impairments warrants remand. He appears to specifically argue that the ALJ erred in failing to consider his post laminectomy syndrome with the side effects of his medications, and to argue that since the ALJ found mild limitations in concentration, persistence and pace, the ALJ erred in failing to explain whether that impacted his functional limitations.

Even assuming Shuler is correct that the ALJ's statement that he considered the combined effect of Shuler's impairments is not sufficient, Shuler has failed to explain how more discussion or explanation by the ALJ regarding the combined effects of his alleged impairments would change the outcome of this case.[4] See, e.g., Brown v. Astrue, C/A No. 0:10-1584-RBH, 2012 WL 3716792, at *6 (D.S.C. Aug. 28, 2012) ("If the Commissioner's analysis is fragmentized, it is, of course, the Plaintiff's task to adequately show the Court that the Commissioner's decision could have been different had he done an adequate combined effect analysis of his multiple impairments."). Moreover, contrary to Shuler's arguments that the ALJ did not consider the side effects from his medications, the ALJ's opinion reflects that she not only acknowledged Shuler's testimony concerning the effects of his medication, she specifically accounted for this in determining his residual functional capacity.  In fact, the ALJ stated that "in light of potential side effects from medication, the claimant has been limited from work around hazards such as unprotected heights and dangerous moving machinery."  (Tr. 24.)  Although Shuler may believe that additional limitations were warranted, this appears to be based on his reported limitations and those included by Mr. Price, both of which were discounted by the ALJ.  Accordingly, based on a review of the decision as a whole, Shuler has failed to demonstrate that the ALJ failed to adequately consider his combined impairments and has not explained how the outcome would have differed with additional discussion; therefore, remand is not warranted on this basis.  See, e.g., Glockner v. Astrue, C/A No. 0:11-955-CMC-PJG, 2012 WL 4092618, at *5 (D.S.C. Sept. 17, 2012) (finding that the ALJ sufficiently discussed the plaintiff's alleged impairments and limitations to demonstrate that he considered the plaintiff's impairments in combination and observing that the plaintiff neither cited an impairment

---

[4] As indicated above, it is the plaintiff's burden to present evidence that his impairments meet or equal a Listing.  Kellough v. Heckler, 785 F.2d 1147, 1152 (4th Cir. 1986).



ignored by the ALJ nor offered any explanation as to how more discussion or explanation may have changed the outcome in the case).

Finally, Shuler points to a few findings in several medical records and generally states that he has presented other findings that demonstrate that his condition met or equaled Listing 1.04A.[5] The ALJ specifically discussed the requirements included in all of Listing 1.04; however, she found that Shuler

> has not had any recent imaging performed since his permanent spinal cord stimulator implantation. Additionally, treatment notes document an 80% improvement in pain with ability to tolerate activity since the procedure. (Exhibit 20F) There is not any evidence to indicate that the claimant has compromise of a nerve root or the spinal cord. Furthermore, his condition has not resulted in an inability to ambulate effectively as defined in 1.00B2b.

(Tr. 19.) Shuler argues that the ALJ incorrectly found that there is not any evidence of a compromise in his nerve root or spinal cord, relying on a January 2009 MRI and a July 2009 MRI. The impression of the January 2009 MRI states "[t]here is contact of the exiting left nerve at L5-S1 from enhancing disc. Possible contact of the exiting right nerve from a minimal amount of disc material. No convincing evidence for neural impingement." (Tr. 402.) Therefore, contrary to Shuler's representations, this evidence does not demonstrate that his nerve root was compromised. Similarly, the other findings identified by Shuler that he argues show "a neuro-anatomic distribution of pain (TR 435), as well as possible muscle atrophy and loss of strength (TR 491-492)" are insufficient to show that the ALJ erred in failing to find that Shuler met or equaled Listing 1.04A.

---

[5] To meet Listing 1.04A a claimant must have disorders of the spine resulting in compromise of a nerve root or the spinal cord with "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A.



**B.     Credibility**

In evaluating subjective complaints, the United States Court of Appeals for the Fourth Circuit has stated that "the determination of whether a person is disabled by pain or other symptoms is a two-step process." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). It appears that in this matter only the second step is at issue,[6] during which the ALJ must expressly consider "the intensity and persistence of the claimant's [symptom] and the extent to which it affects [his] ability to work." Id. In making these determinations, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. "[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded *solely* because they are not substantiated by objective medical evidence." Id. (emphasis added). "This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs [his] ability to work." Craig, 76 F.3d at 595. A claimant's subjective complaints "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges [he] suffers." Id. The social security regulations inform claimants that in evaluating subjective complaints, the Commissioner will consider the following relevant factors:

---

[6] The first step requires there to "be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig, 76 F.3d at 594 (internal quotation omitted).



(i)      Your daily activities;

(ii)     The location, duration, frequency, and intensity of your pain or other symptoms;

(iii)    Precipitating and aggravating factors;

(iv)    The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

(v)     Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi)    Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii)   Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

In this case the ALJ observed that at the hearing, Shuler testified that

he last worked on January 7, 2009. He was checking on drywall jobs at the time and had been working on light duty for about a year. He had his back surgery after he stopped working in 2009. The claimant stated that he does not feel that he can return to work because he is in constant pain and has to stay on medication to even function a little bit. He has pain in his lower back, buttocks and right leg. He had a spinal stimulator implanted in his spine in July 2010. His doctors have told him not to bend or lift over his head. His medications cause him to feel drowsy and he sleeps about 3 hours per day. He has problems sleeping through the night due to pain. His lowest pain level is a 3/10 and his highest pain level is an 8-9/10. He uses the spinal stimulator about all day. He complained that his right leg is weak and that he fell on the back step because his leg gave way after the spinal stimulator was implanted. The claimant stated that he spends about 5-6 hours per day in a reclined position. He can sit for about 30 minutes, stand for about 30 minutes and walk about 100 steps. He can lift about 10-15 pounds and is not able to bend over to touch his knees, squat or kneel. His wife puts his socks and shoes on.

In describing activities of daily living, the claimant testified that he is able to drive short distances, about 5 miles per week. He lives with his wife and three daughters, ages 12, 11 and 4. In school, he failed the 9th grade and did not get a GED. His last completed grade was 8th grade. He can read simple words and write simple words with poor spelling. He can read a tape measure but cannot add and subtract. He spends his day at home and tries to help around the house as much as he can. Sometimes he cooks supper for his family.

(Tr. 20.) The ALJ found that Shuler's "statements concerning the intensity, persistence and limiting effects of [some of these] symptoms are not fully credible to the extent they are inconsistent with the [his] residual functional capacity assessment."[7] (Tr. 20-21.) In reaching this conclusion, the ALJ discussed and summarized Shuler's treatment notes and clinical findings, including Shuler's decompression laminectomy in January 2009, his physical therapy treatment, discussions of Shuler's August 2009 and October 2009 MRI results by Dr. William E. Wilson (Shuler's treating physician), Shuler's pain management treatment notes, Shuler's reports of his daily activities to his various providers, his course of treatment with lumbar epidural steroid injections, implantation in May 2010 of a spinal cord stimulator, permanent implantation in July 2010 of a spinal cord stimulator, reported results from the implantation procedure, and findings from Shuler's March 2011 examination. (Tr. 21-22.) In discussing the medical evidence, the ALJ specifically observed that despite Shuler's complaints of pain Dr. Wilson reported in August 2009 that Shuler's lumbar spine MRI did not reveal any complicating factors, and in October 2009 that Shuler's thoracic spine MRI did not demonstrate any acute findings. Despite Shuler's allegations of pain, Shuler reported daily activities of working, taking care of his kids, general house work, and working in the yard, and he had 5/5 motor strength bilaterally throughout with a normal gait. The ALJ indicated that Dr. Shaughnessy V. Mullen "stated that he would continue narcotics and muscle relaxants as it appeared that these

---

[7] As stated above, the ALJ found that Shuler retained the residual functional capacity "to sit 6 hours in an 8-hour day with normal breaks and stand and walk 6 hours in an 8-hour day with normal breaks although he should have the freedom to change positions. Additionally, he can lift 20 pounds occasionally (up top 1/3 of the workday) and 10 pounds frequently (up to 2/3 of the workday). The claimant can push and pull within the pound limitations set forth above with his upper extremities. He can occasionally operate foot controls with the lower extremities. The claimant cannot climb ladders, ropes or scaffolds and can perform other postural activities occasionally. Furthermore, the claimant must avoid unprotected heights and dangerous moving machinery." (Tr. 19.)

were helping [Shuler's] functionality as he was comfortable with motion witnessed in the exam room and hallway and by his admitted performance of yard work." (Tr. 21.)  The ALJ also found that treatments notes following implantation of the spinal cord stimulator indicated that the procedure was very successful.  Specifically, Shuler reported tremendous improvement and the ability to tolerate activity and permanent implantation was recommended.  The ALJ also noted that in July 2010 Dr. Highsmith similarly found that Shuler had good relief with the stimulator and good strength in his lower extremities, and therefore Shuler elected to proceed with a permanent implantation of the stimulator.  In August 2010, post-surgical notes and a follow-up visit after a fall reveal that Shuler reported that he was pleased with the results and getting good coverage. (Tr. 21.)  The ALJ noted that there were no treatment notes from August 2010 to March 2011, when Shuler established care with a new provider.  The ALJ found that Shuler's failure to seek treatment during this six-month period did not lend credibility to his allegations of disabling pain, observing that he was receiving workers' compensation benefits during this period illustrating that he was financially capable of receiving treatment.  Finally, the ALJ observed and discounted some of the limiting findings at Shuler's most recent March 2011 examination with the new provider.

The ALJ also found that there were many inconsistencies between Shuler's testimony and the medical evidence of record.  Specifically, the ALJ found the following:

> First, the claimant testified that he finished the 8th grade but was not able to complete the 9th grade.  He did not earn a GED and stated that he is reading at the 4th grade level.  The claimant further testified that he can read and write simple words but cannot add or subtract, although he can read a tape measure.  Furthermore, the claimant stated that he had to take an oral exam to get his driver's license and his wife completed his paperwork for Social Security.  Testing performed in November 2010 is inconsistent with the claimant's testimony.  Notably, the claimant achieved a word reading score with a grade equivalent of 5.7, sentence comprehension level of 4.9 and mathematical computation level of 4.5.  His IQ was also measured as 76. (Exhibit 24F at 4)  In combination with the fact that the claimant's past relevant work

is semiskilled and he was responsible for supervising crews about 1/2 of the day, the undersigned does not find any necessity in limiting his residual functional capacity for academic or intellectual deficits.

Additionally, the claimant testified that he has weakness in his right lower extremity and has experienced episodes of falling. He testified to one event where he fell on the back step because his "leg gave way." This incident occurred after he had the spinal stimulator implanted and he had to visit the doctor to make sure it was still working properly. The medical evidence of record only documents one report of falling in August 2010, shortly after his stimulator implant which is consistent with the claimant's testimony. However, the medical evidence of record reveals that the claimant slipped when he fell on a wet step and not because his leg gave out. (Exhibit 20F at 5) This evidence indicates that the claimant's allegations of falling are not credible.

(Tr. 22-23.) Further in the opinion, the ALJ found that Shuler's testimony that he is unable to sit or

stand for more than thirty minutes or walk more than a hundred steps was wholly inconsistent with

his activities of daily living as reported to treating physicians, which included performing yard work,

caring for a three-year-old child, attending church once per week, and assisting with housework, as

these activities did not support a finding that Shuler is unable to perform prolonged sitting or

standing. However, the ALJ stated that "[i]n order to give the claimant the benefit of any doubt, the

undersigned has provided the claimant a sit/stand option so that he can change positions as needed."

(Tr. 23.)

Finally, the ALJ summarized her findings as follows:

Although the claimant's fusion surgery in January 2009 did not resolve his pain issues, his spinal cord stimulator trial implantation in May 2010 and permanent implantation in July 2010 were very successful. The claimant reported tremendous improvement, approximately 80%, following his implant. Shortly thereafter, he reported that the device was working well and he was doing fine. The claimant did not seek any treatment for back pain from August 2010 until March 2011 indicating that his symptoms may not have been as severe as alleged. The medical evidence of record also reflects activities of daily living including caring for his 3-year old child, yardwork and housework. Although not reflected by the earnings record, the claimant also reported in November 2009 that he was working. (Exhibit 19F at 7) The undersigned has accorded the claimant the benefit of the doubt in limiting him



to light work with a sit/stand option.  In deference to his complaints of lower extremity weakness, the undersigned has also limited him to no more than occasional operation of foot controls.  The claimant has also been limited to no climbing of ladders, ropes or scaffolds and only occasional performance of other postural activities.  Lastly, in light of potential side effects from medication, the claimant has been limited from work around hazards such as unprotected heights and dangerous moving machinery.  Based on the inconsistencies indicated above, the undersigned cannot find the claimant's allegation that he is incapable of work activity altogether to be credible.

(Tr. 24.)

Shuler challenges the reasons offered by the ALJ to discount his credibility.  Shuler appears to argue that the ALJ failed to account for his history of back problems before his injury, his conservative treatment before surgery failed, his MRIs post-surgery which purportedly support his allegations of pain, and the side effects from his medications.  Shuler also argues that the ALJ erred in finding that his gap in treatment discounted his credibility as the ALJ should have sought out records from another physician mentioned during the hearing.

Upon review of the records as a whole and the parties' briefs, the court finds that Shuler has failed to demonstrate that the ALJ's determination that Shuler was not entirely credible is unsupported or controlled by an error of law.  As stated above, it the ALJ's duty to weigh credibility, and the court finds the ALJ's conclusion comfortably within the bounds of substantial evidence.  See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]").  Moreover, the ALJ's decision clearly reflects that she considered the relevant factors in weighing Shuler's credibility.  See 20 C.F.R. § 404.1529(c)(3).  Additionally, as stated above, the ALJ's decision reflects that she considered potential side effects from Shuler's medication and provided additional limitations in the residual functional capacity assessment to account for them.  The court

further finds that Shuler has failed to demonstrate that the ALJ ignored any pertinent medical records or that further discussion of some of Shuler's more remote medical records would have rendered the credibility assessment unsupported.

Furthermore, the court disagrees with Shuler that the ALJ erred in discounting his credibility based on a gap in treatment without first seeking out records from a physician mentioned at the hearing. The court observes that Shuler was represented by counsel at his hearing before the ALJ. Further, the ALJ "is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record," and Shuler has failed to demonstrate that this record is incomplete. Clark v. Shalala, 28 F.3d 828, 830-31 (8th Cir. 1994) (cited in Bell v. Charter, No. 95-1089, 1995 WL 347142, at *4 (4th Cir. 1995)). Furthermore, whether he is represented or not, the plaintiff bears the burden of proof, and he is responsible for providing evidence to support his application and demonstrate disability. See 20 C.F.R. § 404.1512(a) & (c); 42 U.S.C. § 423(d)(5)(A). Where the evidence is inadequate for the ALJ to determine disability, the ALJ must seek additional evidence by recontacting treating physicians or psychologists or other medical sources to determine if other information is available. See 20 C.F.R. § 404.1512(e).[8] Shuler has failed to show that the evidence was inadequate for a disability determination; accordingly, Shuler has failed to demonstrate error by the ALJ in this regard.

Therefore, the court finds that Shuler has failed to demonstrate that the ALJ's credibility analysis as a whole is unsupported by substantial evidence or controlled by an error of law. See

---

[8] Effective March 26, 2012, the regulations were amended and this paragraph was removed. The current regulation addressing recontacting sources differentiates between inconsistent and insufficient evidence and where there is insufficient evidence provides the ALJ discretion as to whether to recontact a treating source, or whether to use some other specified method for further development. See 20 C.F.R. § 404.1520b.



Hines v. Barnhart, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (noting that a claimant's allegations "need not be accepted to the extent that they are inconsistent with available evidence"); Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) (noting that the absence of ongoing medical treatment can discredit a claimant's allegations); Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) (*per curiam*) (finding that the ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints); Blalock, 483 F.2d at 775 (indicating that even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence).

## RECOMMENDATION

For the foregoing reasons, the court finds that Shuler has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

June 27, 2014
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).